IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

_____ FILED   _____ ENTERED
_____ LOGGED   _____ RECEIVED

NOV 2 9 2005

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUT

RANDY J. DATCHER,                    *

          Plaintiff,                 *

     v.                              *     Civil Action No. AW-04-734

TOWN OF MORNINGSIDE, MD, *et al.*,   *

          Defendants.                *

* * * * *

## MEMORANDUM OPINION

Plaintiff Randy Datcher ("Datcher" or "Plaintiff") has brought this suit against the Town of Morningside (the "Town") and Officers James Boyd, ("Boyd") and Aaron Heiston ("Heiston") (collectively, "Defendants"), alleging violations of 42 U.S.C. §§ 1983 and 1988 and various state law claims. Currently pending before the Court is Defendants' Motion for Summary Judgment [44]. The Court has reviewed the entire record, as well as the Pleadings, with respect to the instant motion. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated below, the Court will GRANT Defendants' Motion for Summary Judgment.

## FACTUAL & PROCEDURAL BACKGROUND

The following facts are taken in the light most favorable to the non-movant. On March 1, 2003, at approximately 3:00 a.m., Datcher parked his vehicle on the shoulder of Allentown Road in Prince George's County, Maryland because his vehicle had two flat tires. Datcher had one passenger in the vehicle with him, Brian Carroll ("Carroll"). Datcher did not get assistance immediately and decided to wait in his car until daybreak.

At approximately 6:00 a.m., Officer Boyd approached Datcher's vehicle and requested Datcher's license and registration. Complying with Boyd's request, Datcher gave the officer his

license and the registration.  Boyd relayed this information to the dispatcher, who told Boyd that

Datcher was not the registered owner of the vehicle.

While Boyd was speaking with the dispatcher, Datcher contacted his sister on his cellular

telephone in an attempt to make arrangements to replace the two flat tires on his vehicle.  (Amend.

Compl. ¶ 7).  At some point, Officer Heiston arrived at this scene to assist Officer Boyd.  When

Boyd returned to Datcher's vehicle, Boyd informed Datcher that the vehicle would be towed.  Boyd

believed that Town's ordinances, specifically §§ 23-101[1] and 23-124,[2] authorized this action.  In

addition, at the time, the Department of Homeland Security had issued a "code yellow" alert, and

the disabled vehicle was in front of the entrance of Andrews Air Force Base, a place often frequented

by dignitaries.

Upon learning that the officers intended to have the vehicle towed, Plaintiff became agitated.

According to Defendants' account, Datcher began yelling at the officers and shouted profanities at

Officer Boyd.  Heiston requested that additional units respond to the scene to provide back-up.

---

[1] Section 23-101 provides:
   It shall be unlawful for the owner or operator of any vehicle or
   motor vehicle to park or leave said vehicle or motor vehicle
   standing parked and unattended, with the motor running or keys in
   ignition, on any street, highway, or public thoroughfare.  Penalty
   for each violation shall be ($80.00).

[2] Section 23-124 provides:
   All police officers are authorized to remove, cause to be removed
   or tow any vehicle in violation of Sections 23-101 through 23-128,
   using contract tow company.

2

Plaintiff voluntarily exited the vehicle, but proceeded to lunge at Boyd.[3]  Boyd fell to the ground, hitting his head.  Officer Heiston then placed Plaintiff on the ground and restrained him. Meanwhile, Prince George's County, Maryland police arrived at the scene.  Although Plaintiff, in his Complaint, alleged that Officers Boyd and Heiston began to beat him, at Plaintiff's deposition, he did not indicate that Boyd was one of the officers who assaulted him. (Pl. Dep. 87).  In addition, at the deposition, Plaintiff identified several Prince George's County Police Officers as the ones who beat him. Plaintiff, however, could not identify Officer Heiston in a photograph and labeled a person as "Heiston" who was not Officer Heiston.

Following this incident, Plaintiff was transported to Southern Maryland Hospital, where Plaintiff avers he "was never treated [] for his injuries." (Amend. Compl.¶ 7).  After his discharge from Southern Maryland Hospital, Plaintiff was taken to a police station and charged with various criminal acts, including resisting arrest, disorderly conduct, disturbing the peace, and assault on a police officer.  These charges were dismissed in January of 2004.

On February 24, 2004, Datcher instituted this action against Defendants in the Circuit Court of Maryland for Prince George's County.  On March 11, 2004, Defendants filed a Notice of Removal, pursuant to 28 U.S.C. §§ 1331, 1441 and 1446.  Plaintiff amended his Complaint on December 28, 2004.  The Amended Complaint contains nine counts, all stemming from the arrest and alleged beating that occurred on March 1, 2003.  Count I is a Section 1983 claim, alleging that Boyd and Heiston's acts violated Plaintiff's right to be free from unreasonable searches and seizures and to be free from excessive force and for malicious prosecution.  Counts II and III set forth claims

---

[3] Defendants have attached video footage from the dashboard-mounted camera of Boyd's police cruiser.  While Plaintiff earlier contended that Boyd slipped and fell, it appears that Datcher knocked Boyd to the ground.  (Def. Ex. 9).

3

of assault and battery, respectively, against Boyd and Heiston. Count IV and V are claims for false

arrest and false imprisonment, respectively, against Boyd and Heiston. Counts VI, VII, and VIII are

claims of negligent and intentional infliction of emotional distress and false prosecution. Finally,

Count IX is a Section 1983 claim against the Town of Morningside, alleging that the town failed to

adequately supervise and train its police officers. Defendants filed the instant Motion for Summary

Judgment on October 14, 2005, and Plaintiff has not opposed Defendant's motion. Therefore, this

motion is ripe and ready for disposition, and the Court shall now issue an Opinion.

## **STANDARD OF REVIEW**

Summary judgment is only appropriate if there are no genuine issues of material fact and the

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323-25 (1986).  In a motion for summary judgment, the moving party

discharges its burden by showing an absence of evidence to support the non-moving party's case.

*Celotex*, 477 U.S. at 325. The court must "draw all justifiable inferences in favor of the nonmoving

party, including questions of credibility and of the weight to be accorded to particular evidence."

*Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991) (internal citations omitted).  To defeat

a motion for summary judgment, the non-moving party must come forward and show that a genuine

issue of material fact exists. *See Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986). While the evidence of the non-movant is to be believed and all justifiable inferences drawn

in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation

or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330-31 (4th Cir. 1998);

*Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## DISCUSSION

I.   **Qualified Immunity**

Defendants seek dismissal of Datcher's claims against Defendants by motion for summary judgment. With regard to Plaintiff's Section 1983 claim, Defendants have asserted a defense of qualified immunity. Qualified immunity protects government officials performing discretionary functions from claims under federal law "insofar as their conduct does not clearly violate established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see Jones v. Buchanan*, 325 F.3d 520, 531 (4th Cir. 2003). Because qualified immunity provides immunity from suit rather than a mere defense to liability, a trial judge must resolve this issue at the earliest possible stage in litigation. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

The Supreme Court has clarified that in Fourth Amendment and excessive force cases, as in all other cases, entitlement to qualified immunity is a two step inquiry, which must be "considered in proper sequence." *See Saucier v. Katz*, 533 U.S. 194, 200 (2001). Initially, a court must address the threshold question of whether a plaintiff has alleged facts setting forth valid claims for a deprivation of a constitutional right. *Id.* at 201; *see also Williams v. Hansen*, 326 F.3d 569, 574 (4th Cir. 2003). Then, if plaintiffs' constitutional claims survive this threshold review, the court must determine whether that right was clearly established at the time of its alleged violation so that a reasonable person would have known of its violation. *Williams*, 326 F.3d at 574. In this second inquiry, the must consider whether a reasonable officer could have believed that his conduct was lawful. *See Wilson v. Lane*, 526 U.S. 603, 615 (1999).

A court treats qualified immunity as it would any affirmative defense. Once a defendant

5

pleads qualified immunity, the burden shifts to the plaintiff to rebut the defendant's qualified immunity defense. *Bryant v. Muth*, 994 F.2d 1082, 1086 (4th Cir. 1993). The plaintiff then bears the burden of showing that "the defendant's alleged conduct violated the law and that such law was clearly established when the alleged violation occurred." *Id.* (citing *Dixon v. Richer*, 922 F.2d 1456, 1460) (10th Cir. 1991).

Evaluating an assertion of qualified immunity under summary judgment, "the facts are to be taken in the light most favorable to the party asserting the injury." *Clem v. Corbeau*, 284 F.3d 543, 550-51 (4th Cir. 2002) (quotations omitted). The Court must not skew the summary judgment doctrine from its ordinary operation and must not give "special substantive favor" to the party asserting the immunity. *Wilson v. Kittoe*, 337 F.3d 392, 397 (4th Cir. 2003) (internal quotations omitted).

Because Plaintiff's claims against Officers Boyd and Heiston rest on a different set of allegations, this Court will consider the applicability of the doctrine of qualified immunity to each individual defendant separately.

## A.    Officer Boyd

As a threshold matter, in order to determine whether the doctrine of qualified immunity protects Officer Boyd, this Court must analyze what, if any, constitutional violation Plaintiff asserts. Plaintiff has testified that Boyd did not arrest him and that Boyd was not involved in the alleged beating. Furthermore, this Circuit does not recognize a Section 1983 claim for malicious prosecution as a cause of action independent of a Fourth Amendment violation.[4] Therefore, this Court must first

---

[4] In *Lambert v. Williams*, 223 F.3d 257 (4th Cir. 2000), the Court of Appeals explained that:

> [T]here is no such thing as a "§ 1983 malicious prosecution" claim.

consider whether Boyd's actions constituted an unreasonable search or seizure of Plaintiff.[5]  Viewing

the facts in the light most favorable to Plaintiff, the record reflects that Officer Boyd approached

Plaintiff's vehicle, ordered him to produce identification, and directed Plaintiff to exit the vehicle.

The Fourth Amendment secures "The right of the people to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures . . . but upon probable cause,

supported by Oath or affirmation, and particularly describing the place to be searched, and the

persons or things to be seized."  U.S. Const. amend. IV.  Although a traffic stop may constitute a

"seizure," a police officer may detain a vehicle briefly if he has reasonable suspicion, based on

specific and articulable facts, of unlawful conduct.  *See United States v. Hassan El*, 5 F.3d 725, 730

(4th Cir. 1993) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)).  As a general rule, "the decision to stop a

vehicle is reasonable where the police have probable cause to believe that a traffic violation has

occurred."  *Whren v. United States*, 517 U.S. 806, 810 (1979) (citing *Delaware v. Prouse*, 440 U.S.

648, 659 and *Pennsylvania v. Mimms,* 434 U.S. 106, 109 (1977) (*per curiam*)).  Evaluating the

constitutionality of the traffic stop, a court must make "an objective assessment of the officer's

_____

> What we termed a "malicious prosecution" claim in *Brooks* is
> simply a claim founded on a Fourth Amendment seizure that
> incorporates elements of the analogous common law tort of
> malicious prosecution--specifically, the requirement that the prior
> proceeding terminate favorably to the plaintiff . . . .  It is not an
> independent cause of action.

*Id.* at 262 (internal citations omitted).

[5] Datcher also alleges a violation of the Fourteenth Amendment.  The Supreme Court has made clear that a constitutional violation related to the arrest or seizure of a person must be analyzed under the Fourth Amendment, not the Fourteenth Amendment.  *See, e.g., Graham v. Conner*, 490 U.S. 386, 395 (1989) (holding that Section 1983 claim for excessive force is an allegation of a Fourth Amendment violation not a Fourteenth Amendment violation).

actions in light of the facts and circumstances confronting him at the time . . . and not on the officer's actual state of mind at the time the challenged action was taken." *Hassan El*, 5 F.3d 726, 731 (internal citations and quotations omitted).

In this case, Officer Boyd had reasonable suspicion when he approached Plaintiff's vehicle and requested Plaintiff's license and registration. Boyd observed a disabled vehicle, stopped in front of Andrew's Air Force Base, during a "code yellow alert." As Boyd neared the vehicle, he could see Plaintiff and Carroll's figures inside the vehicle. Examining the "totality of the circumstances," the fact that Plaintiff was in a disabled car, outside a military base, a reasonable officer could have suspected criminal activity was afoot.

In addition, the Supreme Court has made clear that because "every traffic stop poses a meaningful level of risk to the safety of police officers, police officers may also order the driver to step out of the vehicle with no more suspicion than that justifying the traffic stop itself." *See Maryland v. Wilson,* 519 U.S. 408, 410 (1997); *Mimms*, 434 U.S. 106, 111 n.6. Therefore, Boyd's decision to order Plaintiff to step out of the vehicle did not exceed the limits set by the Fourth Amendment.

Although Plaintiff's Amended Complaint also alleges that Boyd used excessive force, Plaintiff has testified under oath that Boyd did not restrain him and did not use force against him. Accordingly, this Court will dispose summarily of his Section 1983 excessive force claim. Because Boyd's acts do not amount to a Fourth Amendment violation and because liability for malicious prosecution cannot attach under Section 1983 without an unconstitutional search or seizure, Plaintiff cannot establish that Boyd violated his constitutional rights. In the absence of a constitutional violation, qualified immunity protects Officer Boyd from liability under Section 1983.

8

**B.     Officer Heiston**

Similarly, this Court finds that Officer Heiston did not violate the Fourth Amendment by

arresting Plaintiff.  When Heiston arrived at the scene, Heiston observed Plaintiff lunging at Boyd

and Boyd falling to the ground.  Maryland law authorizes a "police officer who has probable cause

to believe that a felony or misdemeanor is being committed in the presence or within the view of the

police officer [to] arrest without a warrant any person whom the police officer reasonably believes

to have committed the crime."  Md. Code Ann., Crim. Proc. § 2-202(b) (2002).  In addition,

Maryland law criminalizes the act of intentionally causing or attempting to cause bodily injury, as

assault, a felony.  *See* Md. Code Ann., Crim. Law §§ 3-202 & 3-203.  Based on the information

available to Officer Heiston, he reasonably concluded that Plaintiff either assaulted or attempted to

assault Officer Boyd.  It is well established that the Fourth Amendment allows officers to make

warrantless arrests for misdemeanors and felonies.  *See Atwater v. City of Lago Vista*, 532 U.S. 318

(2001) (holding that an officer's arrest for misdemeanor traffic offense did not violate the Fourth

Amendment).  Where, as here, an officer arrests a suspect for a crime committed in the officer's

presence, that officer's conduct does not offend the constitutional requirements of the Fourth

Amendment.

Furthermore, no evidence indicates that Officer Heiston used more force than necessary in

his arrest of Plaintiff.  Claims of excessive force in the course of an arrest or an investigatory stop

also are analyzed under the Fourth Amendment.  *See Graham v. Conner*, 490 U.S. 386, 395 (1989).

As discussed above, the touchstone of Fourth Amendment analysis is "reasonableness."  *See, e.g.*,

*id.* at 396; *United States v. Dunnock*, 295 F.3d 431, 435 (4th Cir. 2002).  Looking at Heiston's

actions through an objective lens, this Court must consider whether the force Heiston employed

during the arrest was 'reasonable' in light of the facts and circumstances confronting him. *Cf. Graham*, 490 U.S. at 397. In performing the reasonableness inquiry, the Court remains mindful that it must weigh "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Buchanan*, 325 F.3d at 527 (quoting *Graham*, 490 U.S. at 396); *see also Turmon v. Jordan*, 405 F.3d 202 (4th Cir. 2005). "The extent of the plaintiff's injuries is also a relevant consideration." *Buchanan*, 325 F.3d at 527.

It appears evident that Officer Heiston could lawfully restrain Plaintiff and handcuff him. Whether Heiston applied force in excess of that necessary to accomplish the arrest depends on whether Heiston used other force during the arrest. Some evidence indicates that Heiston pushed Plaintiff to the ground when he arrested him. In light of the fact that Plaintiff appeared to act aggressively toward Boyd, Heiston used a reasonable amount of force to arrest Plaintiff, as it appears that Plaintiff posed a physical threat to the safety of the officers at the scene. While Plaintiff's Amended Complaint alleges that Officer Heiston began to strike Plaintiff, in his deposition, Plaintiff under oath identified Prince George's County Police Officers, not Heiston, as the ones who beat him. Even examining the evidence in the light most favorable to Plaintiff, no reasonable jury could find, based on Plaintiff's testimony, that Heiston used excessive force. Furthermore, because Plaintiff has failed to show that Heiston violated his rights under the Fourth Amendment, Plaintiff cannot prove a Section 1983 malicious prosecution claim against Heiston. As a result, Heiston is entitled to qualified immunity, and this Court will enter summary judgment in favor of Heiston on Count I of Plaintiff's Amended Complaint.

## C.   The Town of Morningside

Having found no Fourth Amendment violation, this Court must also grant summary judgment

on Count IX, Plaintiff's claims against the Town of Morningside.  Although the Supreme Court has

held that a municipality is an individual for the purposes of Section 1983 in *Monell v. Department*

*of Social Services of the City of New York*, 436 U.S. 658 (1978), the Court emphasized that:

> a municipality cannot be held liable *solely* because it employs a
> tortfeasor--or, in other words, a municipality cannot be held liable
> under § 1983 on a *respondeat superior* theory.
>
> . . .
>
> [T]herefore, . . . a local government may not be sued under § 1983 for
> an injury inflicted solely by its employees or agents.  Instead, it is
> when execution of a government's policy or custom, whether made
> by its lawmakers or by those whose edicts or acts may fairly be said
> to represent official policy, inflicts the injury that the government as
> an entity is responsible under § 1983.

*Id.* at 691, 694 (emphasis in original).  As this Court may not impose vicarious liability under

Section 1983, Plaintiff needs to prove two elements to succeed in his Section 1983 claim against the

Town of Morningside.  First, Plaintiff must establish the existence of a constitutional violation, and,

second, Plaintiff must show that those who inflicted the injury acted pursuant to a Town of

Morningside policy or custom.  *See Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 724 (4th

Cir. 1991) ("A claim of inadequate training under section 1983 cannot be made out against a

supervisory authority absent a finding of a constitutional violation on the part of the person being

supervised"); *Dawson*, 896 F. Supp. at 540 (Plaintiff's "claims against the County hinge on his

ability to show that [an] 'active' Defendant . . .violated his constitutional rights"); *Marryshow v.*

*Bladensburg*, 139 F.R.D. 318, 319 (D. Md. 1991) (same).  Plaintiff has shown neither element, as

he has not demonstrated that either Defendant violated his constitutional rights.  As such, summary

judgment is appropriate.

11

II.  **Plaintiff's State Law Claims**

A.  **Assault and Battery**

By Plaintiff's own admission, Boyd and Heiston did not engage in the alleged beating. As Plaintiff has presented no evidence to support his initial allegation that these officers beat him and as Plaintiff later stated that these officers, in fact, were not involved in the beating, this Court finds that Boyd and Heiston are entitled to summary judgment on Plaintiff's claims of assault and battery.

**B.  False Arrest and False Imprisonment**

Maryland law makes no distinction between the torts of false arrest and false imprisonment. *See Montgomery Ward v. Wilson*, 664 A.2d 916, 925-29 (Md. 1995). To prove false imprisonment, a plaintiff must show that a police officer deprived the plaintiff of his liberty without consent and without legal justification. *See Ashton v. Brown*, 660 A.2d 447, 471 (Md. 1995). Conversely, a police officer will not be held liable for false imprisonment if he had legal authority to arrest under the circumstances. *See id.* at 471-72.

The record shows that Boyd did not arrest Plaintiff and in no way curtailed Plaintiff's liberty. Plaintiff remained in the same place during his encounter with Boyd, and Boyd did not attempt to take Plaintiff into custody. In addition, this Court has explicitly found that Heiston had legal authority to arrest Plaintiff pursuant to the Maryland Code. These facts prove fatal to Plaintiff's claims of false imprisonment and false arrest, and this Court will grant summary judgment on these claims.

C.  **Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress**

12

Plaintiff also alleges that Defendants committed the common law torts of intentional infliction of emotional distress and negligent infliction of emotional distress, predicated on the same operative set of facts.

At the outset, this Court must note that Maryland does not recognize the tort of negligent infliction of emotional distress. *Williams v. Prince George's County*, 685 A.2d 884, 899 (Md. Ct. Spec. App. 1996) ("[W]e [have] held. . . that Maryland does not recognize the separate and distinct tort of negligent infliction of emotional distress") (quoting *Hamilton v. Ford Motor Credit Co.*, 502 A.2d 1057 (Md. Ct. Spec. App. 1986)).  Therefore, the Court will grant Defendant's motion for summary judgment on this claim.

Although Maryland law does recognize the tort of intentional inflection of emotional distress, Plaintiff has not adduced any evidence in support of this claim.  A plaintiff must prove four elements to succeed in a claim for intentional inflection of emotional distress: (1)  that conduct is intentional or reckless; (2) that the conduct is extreme and outrageous; (3) that there exists a causal connection between the wrongful conduct and the emotional distress; (4) and that the emotional distress is severe. *See Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 113 (Md. 2000) (quoting *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977)).  The available evidence does not substantiate Plaintiff's claim that Heiston or Boyd's actions were "extreme and outrageous." Boyd reasonably requested that Plaintiff step outside of the car because Plaintiff had a disabled vehicle parked in front of a military base during a code "yellow" alert. Heiston arrested Plaintiff after he observed Plaintiff lunge at Boyd and Boyd fall to the ground.  These acts alone simply do not rise to the level of "extreme and outrageous" conduct necessary to maintain a cause of action for intentional inflection of emotional distress. Because Plaintiff has failed to show the requisite elements of intentional infliction of emotional

distress, this Court will grant summary judgment for Defendants on Count VI of Plaintiff's Amended Complaint.

D.    **Malicious Prosecution**

Turning to Count VIII of Plaintiff's Amended Complaint, malicious prosecution, again this Court finds that Plaintiff has not proffered sufficient evidence to show the existence of a dispute as to an issue of material fact. The tort of malicious prosecution has four elements:"(1) that a criminal proceeding was instituted or continued by the defendant against the plaintiff, (2) that the proceeding terminated in favor of the plaintiff, (3) the absence of probable cause for the proceeding, and (4) malice, meaning that a primary purpose in instituting the proceeding was other than that of bringing the plaintiff to justice." *DiPino v. Davis,* 729 A.2d 354, 373 (Md. 1999) (citing *Montgomery Ward v. Wilson,* 664 A.2d at 922 (1995)). Maryland Courts have maintained the position that "the malice element of malicious prosecution may be inferred from a lack of probable cause." *Montgomery Ward,* 664 A.2d at 924 (internal quotations omitted).

That Plaintiff succeeded in the legal proceedings brought against him does not lead to the ineluctable conclusion that Defendants lacked probable cause to arrest Plaintiff. Heiston believed that he had witnessed Plaintiff assault Boyd in his presence. Certainly, this fact gave Heiston probable cause for the arrest and the Town probable cause for the proceeding. Furthermore, no evidence indicates that either officer or the Town of Morningside brought charges against Plaintiff for any reason other than bringing Plaintiff to justice. As there is no evidence of malice and as this Court has found that probable cause existed to believe that Plaintiff committed a felony, this Court will grant summary judgment on Plaintiff's claims of malicious prosecution.

## **CONCLUSION**

For all of the aforementioned reasons, the Court will GRANT Defendants' Motion for Summary Judgment [44].  An Order consistent with this Opinion will follow.

Date:  November 29, 2005

Alexander Williams, Jr.
United States District Court